UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-551-CHL

CHRISSY C. ALASMAR,                                                                               Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,                           Defendant.

## Memorandum Opinion and Order

Plaintiff Chrissy Alasmar ("Alasmar") appeals the Commissioner's denying her application for supplemental security income ("SSI") benefits. (DN 14-2, #55.) On December 2, 2016, Alasmar consented to the undersigned's jurisdiction. (DN 16.) For the reasons stated below, the Court **REVERSES** the Commissioner's decision and **REMANDS** the case to the Commissioner for further adjudication.

### I. Statement of Facts

On September 30, 2014, Alasmar filed an application for SSI. (DN 14-3, #144.) The Commissioner denied her initial application and again upon reconsideration. (*Id*. at 143.) Alasmar then appeared for a hearing before an Administrative Law Judge ("ALJ"), who later issued an opinion denying Alasmar's claim. (DN 14-2, #70.) In his written opinion, the ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since September 30, 2014, the application date (20 CFR 416.971 *et seq*.).
>
> 2. The claimant has the following severe impairment: degenerative disc disease (20 CFR 416.920(c)).

1

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is unable to climb ladders, ropes or scaffolds. The claimant is limited to frequently climbing ramps and stairs. The claimant is able to stoop and crouch occasionally. The claimant is able to crouch and crawl frequently. The claimant should avoid dangerous machinery and unprotected heights. The claimant should not engage in repetitive cervical neck rotation to the right, and can rotate her neck to the right on a frequent basis.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was horn on January 24, 1963 and was 51years old, which is defined as a younger individual age 18-49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 30, 2014, the date the application was filed (20 CFR 416.920(g)).

(DN 14-2, #75–81.) The appeals council denied Alasmar's request for review. (*Id*. at 55.)

## II. Standard of Review

The Social Security Act authorizes payment of DIB and SSI to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as follows:

> [An i]nability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. 20 C.F.R. § 404.1520(a)(1); *Sullivan v. Finkelstein*, 496 U.S. 617, 620 (1990). Steps two and four are at issue here.

At step two, the ALJ determines if the claimant has a "severe" impairment, and it is the claimant's burden to demonstrate that she does. 20 C.F.R. §§404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). To satisfy this burden, the claimant must show he or she suffers from a medically determinable physical or mental condition that satisfies the duration requirement 20 C.F.R. §§404.1509, 416.909 and significantly limits his or her ability to do one or more basic work activities. 20 C.F.R. §§404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c); SSR 96-3p; SSR 96-4p; *Higgs*, 880 F.2d at 863. Alternatively, the claimant must show he suffers from a combination of impairments that is severe and meets the duration requirement. 20 C.F.R. §404.1520(a)(4)(ii) and (c).

At step four, the ALJ considers the claimant's residual functional capacity ("RFC") and past relevant work. 20 C.F.R. § 404.1520(a). RFC is an assessment of the claimant's "remaining capacity for work once her limitations have been taken into account." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004) (internal quotation marks omitted). The claimant has the burden of proof during the first four steps. *Jones v. Comm'r of Soc. Sec.*, 336

F.3d 469, 474 (6th Cir. 2003). At step five, the ALJ assesses the claimant's residual functional capacity along with age, education, and work experience. 20 C.F.R. § 404.1520(g)(1). A claimant who cannot make an adjustment to other work is disabled. 20 C.F.R. § 404.1520(g)(1).

The Court's review is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence." 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton*, 2 F. 3d at 695. In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). The Court must also determine if the correct legal standards were applied. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

### III. Analysis

On review, Alasmar argues that the ALJ made three errors in his written opinion. First, she alleges that he did not follow social security regulations, agency policy, and Sixth Circuit precedent when he assigned limited weight to the opinion of Dr. Kamlesh Dave, Alasmar's treating physician. (DN 19-1, #616.) Second, she asserts that the ALJ erred when he determined that her "mental impairments" were not severe and thus did not include them in his RFC finding. (*Id*. at 626.) Finally, Alasmar states that the ALJ erred when he failed to discuss Dr. Dave's

diagnosis of dementia in his decision. (*Id*. at 630.) The Court will address these arguments in turn.

## A. Treatment of Dr. Dave's Opinion

Alasmar's chief complaint is that the ALJ failed to give "good reasons," required by both the Sixth Circuit and Social Security regulations, as to why he did not afford Dr. Dave's medical opinion controlling weight. (DN 19-1, #616.) She points to the brevity of the ALJ's discussion of Dr. Dave's opinion which, in its entirety, reads:

> The medical source statement completed by the claimant's treating physician, Dr. Dave Kamlesh [sic] is given little weight. There is limited evidence to support the extreme limitations regarding sitting, standing, lifting and carrying and the physicians [sic] own notes indicate that the claimant's pain is well controlled with medication. Therefore, this opinion is given little weight, as it is inconsistent with the evidence of record that has been discussed above.

(DN 14-2, #79) (internal citations omitted). Alasmar asserts that the ALJ failed to discuss several of the factors enumerated in 20 C.F.R. §416.927(c) at all. (DN 19-1, #619.) In response, the Commissioner argues that the ALJ's discussion of Dr. Dave's opinion was sufficient because Sixth Circuit case law allows for an ALJ to summarily satisfy the "good reason" requirement so long as his statement reflects the factors required by law. (DN 24, #645.)

The parties do not seem to contest that Dr. Dave qualifies as Alasmar's treating physician. It is well-established that "the opinion of a treating physician is entitled to greater weight only if it is based on objective medical findings and is not contradicted by substantial evidence to the contrary." *Edwards v. Comm'r of Soc. Sec.*, 97 Fed. App'x. 567, 570 (6th Cir. 2004) (citing *Crouch v. Sec'y of Health & Human Servs.*, 909 F. 2d 852, 857 (6th Cir. 1990)); *Hardaway v. Sec'y of Health and Human Servs.*, 823 F. 2d 922, 927 (6th Cir. 1987). If the ALJ does not give controlling weight to a treating source's opinion, he is required to:

5

> [A]pply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§404.1527(c), 416.927(c). These factors are the "good reasons" the Court referenced above. *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011). Even though the ALJ must articulate "good reasons," he is not required to explicitly recite the regulation factors as long as his explanation reflects them. *Infantado v. Astrue*, 263 Fed. App'x. 469, 474 (6th Cir. 2008). Moreover, the Commissioner is correct in asserting that one-sentence explanations can be sufficient under Sixth Circuit precedent. *See Allen v. Comm'r of Soc. Sec.*, 561 F. 3d 646, 651 (6th Cir. 2009) (holding that the ALJ's one sentence rejection of a treating physician's opinion was proper where the opinion was conclusory, not supported by objective medical evidence, and addressed claimant's credibility, and where the ALJ's sentence explained as much).

In this case, the Court concludes that substantial evidence does not support a finding that the ALJ gave "good reasons" for assigning Dr. Dave's opinion little weight. Although the ALJ's discussion of Dr. Dave's opinion references one of the §416.927(c) factors (that his opinion does not comport with the record as a whole), it does not explain how Dr. Dave's opinion is different from the rest of the record, nor does it reference any of the other factors set forth in §416.927(c). (DN 14-2, #79.) This is what separates the ALJ's brief explanation in this case from the ALJ's explanation in *Allen*, where, as referenced above, the Sixth Circuit upheld a brief explanation as satisfying the "good reasons" requirement. In *Allen*, the ALJ's explanation touched on several of the required factors, namely the length of the treatment relationship and frequency of the

6

examination, the nature and extent of the treatment relationship, and the supportability of the opinion. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009). As the ALJ noted, the treating physician's opinion seemed to him to be speculative because the physician had examined the claimant only sparingly. (*Id.*)

The Court does not mean to suggest that an ALJ's brief explanation must touch on at least three of the factors to pass muster or that there is otherwise a minimum "factor requirement." But it must explain with at least some specificity why the ALJ is not assigning controlling weight to a treating physician's opinion; the mere assertion that a treating physician's opinion is inconsistent with the record – without discussing what the opinion actually is – does not provide the Court or the claimant with a sufficient understanding of why the opinion was rejected. *See Biestak v. Comm'r of Soc. Sec.*, 880 F.3d 778, 786 (6th Cir. 2017) ("The point of the 'good reasons' rule is to permit meaningful review of the ALJ's decision and to ensure that a claimant is not 'bewildered' when an administrative bureaucracy tells him that he is not disabled.") (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). *See also Hollon v. Comm'r of Soc. Sec.*, 142 F. Supp.3d 577, 584 (S.D. Ohio 2015) (conclusory analyses of a medical opinion, whether from a treating source or not, are insufficient under the regulations).

It should be noted that the Court is not opining on whether Dr. Dave's opinion should be given controlling weight, limited weight, or no weight at all, only that the ALJ did not follow Sixth Circuit precedent or the applicable social security regulations when conducting his analysis. On remand, the ALJ shall conduct a proper analysis of Dr. Dave's opinion.

### B. Designation of Alasmar's Mental Impairments as "Non-Severe"

Next, Alasmar contests the ALJ's analysis of her alleged mental impairments. In his written opinion, the ALJ determined that her "depression, anxiety, and insomnia. . .do not cause more than minimal limitation in [Alasmar's] ability to perform basic mental work activities and are therefore nonsevere." (DN 14-2, #75.) The ALJ then proceeds to analyze Alasmar's mental impairments under the four functional areas of (1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation, ultimately determining that her mental impairments are non-severe because she has, at most, "mild" limitations in the first three categories and no noted episodes of decompensation. (*Id*. at 75–76.) Alasmar disputes the ALJ's finding of non-severity, but in the alternative, argues that even if her mental impairments are non-severe, the ALJ should have stilled factored them into his RFC analysis. (DN 19-1, #629.)

At step two of the five step analysis, a condition will be deemed a "severe" impairment if it "significantly" limits a claimant's physical or mental ability to do basic work activities. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Only slight abnormalities that minimally affect a claimant's ability to work can be considered non-severe." *Jones v. Comm'r of Soc. Sec.*, 142 F. Supp.3d 620, 628 (S.D. Ohio 2015) (citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998)). It is the claimant's burden to present evidence to establish the fact that she suffers from a severe impairment. *Watters v. Comm'r of Soc. Sec. Admin.*, 530 Fed. App'x 419, 421 (6th Cir. 2013).

Here, substantial evidence supports the ALJ's conclusion that Alasmar's mental impairments were not severe. In his discussion of her alleged mental impairments, the ALJ properly utilized, as the Commissioner notes, the "special technique" for evaluating mental

impairments listed in 20 C.F.R. §416.920a(a). This special technique requires that the ALJ consider the following:

> [A]ll relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment.

*Id*. at §416.920a(c)(1). The ALJ's must "incorporate the pertinent findings and conclusions based on the technique" into his written decision. *Id*. at §416.920a(e)(4). He does so by analyzing how the alleged mental impairments affect four broad functional areas. *Id*. at §404.15209b)(3). Relying on Alasmar's testimony at her hearing and partially on the results of her exam with Dr. Brandon Dennis, the consultative psychologist, the ALJ concluded that she did not have anything more than "mild" limitations in each category and "no" episodes of decompensation. (DN 14-2, #76.) For the area of daily living, the ALJ noted that Alasmar cooks for herself and others, cleans the house (albeit with breaks because of her physical limitations), does laundry, paints, and drives every "couple of days." (*Id*. at 76.) In social functioning, the ALJ noted that although Alasmar "had issues with family members," she reported having good social interaction with her coworkers the last time she worked. (*Id*.) Moreover, she had a good relationship with her family and had no issues interacting with the public when going to the grocery store or doctor appointments. (*Id*.) In regards to concentration, persistence, or pace, the ALJ noted that although Dr. Dennis found that Alasmar had a "little difficulty" remembering one and two stage instructions and some trouble sustaining attention, she had not received any treatment from a mental health professional for these alleged issues since 2009. (*Id*.) He notes that her only treatment appeared to be receiving medication from Dr. Dave, which, as the ALJ stated, "controlled her symptoms." (*Id*.) Based on the medical

9

evidence, the ALJ concluded that Alasmar had "mild" limitations in each of these areas. (*Id.*) Finally, he found that Alasmar did not have any extended episodes of decompensation. (*Id.*)

Never does Alasmar explain how the ALJ's analysis of the four functional areas is flawed. Instead, her argument is limited to selectively summarizing the medical evidence that favors her position without an explanation of how that evidence undermines the ALJ's analysis of any of the four areas. It is not the Court's job to craft arguments on behalf of the claimant when the claimant has herself failed to do so. *See Owings v. Colvin*, 133 F. Supp. 3d 985, 997–98 (M.D. Tenn. 2015) ("The district court is not obligated on judicial review to supply factual allegations in support of claims where no facts are alleged.") Moreover, even though Alasmar has presented facts that could lead a reasonable fact finder to conclude that her mental impairments are "severe," the Commissioner's decision is not subject to reversal just because substantial evidence supports a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772–73 (6th Cir. 2001); *Elkins v. Sec'y of Health and Human Servs.*, 658 F.2d 437, 439 (6th Cir. 1981).

But even if the ALJ erred in finding Alasmar's mental impairments to be non-severe, it is not relevant in this case because he found her impairment of degenerative disc disease to be severe. (DN 14-2, #75.) At the very worst, his failure to find the mental impairments as severe would be harmless error. *See, e.g., Anthony v. Astrue*, 266 Fed. App'x. 451, 457 (6th Cir. 2008); *Pompa v. Comm'r of Soc. Sec.*, 73 Fed. App'x. 801, 803 (6th Cir. 2003) (holding that because the ALJ found the claimant to have at least one severe impairment at step two, it was of "little consequence" whether he found any other ailments to be severe).

In regards to whether the ALJ incorporated her mental impairments into his RFC analysis, Alasmar alleges that the ALJ "failed to address [her] nonsevere mental impairments in

the RFC finding." (DN 19-1, #629.) The RFC analysis is meant to "describe the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from," although those maladies are not irrelevant in the FC analysis. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Once again, it is Alasmar's burden to prove her RFC. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); 20 C.F.R. § 416.945(a)(3).

Alasmar is incorrect in asserting that the ALJ did not address her medical impairments in his RFC analysis. In the RFC analysis, the ALJ considered two medical source statements by Dr. Michelle Bornstein and Dr. Dan Vandivier, two state agency psychologists, who opined that Alasmar did not have any severe mental impairment. (DN 14-2, #79.) The ALJ also noted that the only mental health treatment Alasmar has received has been in the form of medication from Dr. Dave, her primary care physician, and that she has not sought or received any psychiatric treatment or inpatient services for her alleged impairments. (*Id.*) This explanation is more than sufficient to justify why the ALJ did not include limitations related to Alasmar's alleged mental impairments in his analysis. Moreover, in his hypothetical questioning to the vocational expert, the ALJ specifically asked her if her analysis would change if Alasmar were limited to "simple, repetitive tasks," an obvious acknowledgement of her potential mental impairments, and the vocational expert stated Alasmar would still be capable of performing the three jobs she had listed. (DN 14-2, #125.)

Therefore, the Court finds that substantial evidence supports the ALJ's RFC analysis regarding Alasmar's alleged mental impairments. *See also* SSR 98-6p (July 2, 1998) (stating that the four category analysis is "not an RFC assessment" but rather a method used to rate the

severity of a claimant's mental impairments at steps two and three of the sequential evaluation process).

### C. ALJ Failed to Develop the Record Regarding Alasmar's Dementia

Lastly, Alasmar argues that the ALJ erred when he "failed to develop the record regarding Plaintiff's diagnosis of dementia." (DN 19-1, #630.) She argues that even though she was represented at the hearing, the ALJ still had an affirmative duty to discuss Dr. Dave's diagnosis of dementia on his written opinion, and his failure to even mention it constitutes reversible error. (*Id*.) She points to statements she made in her hearing before the ALJ, such as that she felt "brain dead," as evidence of dementia. (*Id*. at 631.) She also cites a Sixth Circuit case, *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048 (6th Cir. 1983), in support of the proposition that even when a claimant is represented at a hearing, the ALJ has "an affirmative duty to fully develop the factual record upon which the decision rests." (DN 19-1, #630.) In response, the Commissioner argues that Dr. Dave's diagnosis of dementia was not a medically determinable impairment because Alasmar failed to proffer sufficient evidence that she actually suffered from the disease. (DN 24, #655.)

As with all other aspects of her claim, Alasmar has the statutory burden of demonstrating that she suffered from a "medically determinable" impairment, one that is "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1520a(a). If no signs or laboratory findings substantiate the existence of an impairment, the disability analysis ends in regards to that impairment. *Tirey v. Astrue*, 2013 WL 435056, at *6 (S.D. Ohio. Feb. 5, 2013) (citing SSR 96-4p (July 2, 1996)).

Here, the ALJ had no affirmative duty to address Alasmar's alleged dementia. On her application for SSI, Alasmar did not indicate that dementia was one of her complained-of medical conditions, although she did state that she had "memory problems." (DN 14-6, #242.) At her administrative hearing, Alasmar's representative elicited some testimony about her "memory problems," notably that she felt that she was "brain dead" and that she "can't remember anything." (DN 14-2, #120.) Courts in this circuit have addressed the consequences of failing to raise a claim in an application for benefits and not adducing all relevant evidence at the administrative hearing. *Gilbert v. Comm'r of Soc. Sec.*, 2016 WL 8114195, at *6–7 (E.D. Mich. Apr. 29, 2016) (collecting sources). Summarized briefly, in *Motin v. Comm'r of Soc. Sec.*, 2010 WL 1754871 (E.D. Mich. Apr. 6, 2010), the Court examined doctrines from different circuits regarding the consequences of this failure. In the Eight Circuit, for instance, a failure to raise a medical condition on the initial application and adduce evidence of it at the administrative hearing constitutes waiver. *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (citing *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996) (the ALJ is "under no 'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.' ")).

The Court finds the Eight Circuit's reasoning in *Anderson* and *Pena* instructive. Besides the colloquial assertions that Alasmar was "brain dead" and "can't remember anything," neither Alasmar nor her representative presented evidence at her hearing regarding her alleged dementia. She does not contest the fact that she failed to include dementia in her initial application for SSI. The *only* indication that Alasmar is suffering from dementia is one word on Dr. Dave's RFC questionnaire; he does not explain the basis behind his diagnosis, nor does he attach any

examination results to support his diagnosis.  (DN 14-7, #599.)  Alasmar was also allowed to submit additional records following her hearing and did so, but chose not to submit any evidence that would show she has dementia.  (DN 14-2, #89.)  Alasmar cannot attempt to slip in a mere reference to a medical condition at the eleventh hour and then claim the ALJ failed to properly inquire into it.

## IV. Conclusion

Based on the foregoing reasons, the Court **REVERSES** the Commissioner's decision, and pursuant to 42 U.S.C. §405(g), **REMANDS** the case to the Commissioner for further activity consistent with this opinion.  The Court will enter a separate order of judgement.


cc:  Counsel of record